**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MANUEL RODITI, et al.,<br><br>          Plaintiffs,<br><br>v.<br><br>NEW RIVER INVESTMENTS INC., et al.,<br><br>          Defendants. | Case No.: 3:20-cv-01908-RBM-MSB<br><br>**ORDER DENYING DEFENDANTS NEW RIVER INVESTMENTS, INC., RODITI & RODITI, LLC, ALBERTO RODITI, AND GUILLERMO RODITI DOMINGUEZ'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' FIRST AND SECOND CLAIMS**<br><br>**[Doc. 52]** |

  On May 4, 2022, Defendants New River Investments, Inc., Roditi & Roditi, LLC, Alberto Roditi, and Guillermo Roditi ("Defendants") filed a motion for partial summary judgment ("partial MSJ"). (Doc. 52.) Plaintiffs Manuel Roditi and Venice Bejarano ("Plaintiffs") filed their opposition to Defendants' partial MSJ on May 6, 2022. (Doc. 58.) Defendants filed their reply on May 27, 2022. (Doc. 64.) The Court took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). (Doc. 65.)

  On August 12, 2022, the undersigned issued an order dismissing Roditi & Roditi, LLC, granting in part and denying in part Defendants' partial MSJ, reserving ruling on Plaintiffs' first and second causes of action, and ordering supplemental briefing as to

whether the alleged wrongdoing is in "connection to the purchase or sale of any security." (Doc. 72.)  Defendants filed supplemental briefing on August 26, 2022 (Doc. 73), and Plaintiffs filed a response on September 9, 2022 (Doc. 77).  For the reasons discussed below, Defendants' partial MSJ as to Plaintiffs' first and second causes of action for violation of section 10(b), rule 10b–5, and section 20(a) of the Exchange Act is **DENIED**.

## I.     BACKGROUND

Defendant Roditi & Roditi, LLC ("R&R") is an investment management company. (Doc. 29 at 3.)  Alberto Roditi and Guillermo Roditi are the managing directors of R&R. (*Id.*)  Defendant New River Investments, Inc. ("NRI") is a registered investment advisor and is affiliated with R&R.  (*Id.*)

Plaintiffs allege that in or around April 2011, Plaintiffs engaged in an investment relationship and maintained three investment accounts with Defendants through NRI.  (*Id.*) "Plaintiffs' investments were managed by Defendants via NRI using two custodians: two accounts at TD Ameritrade, and one account at Interactive Brokers." (*Id.* at 4.)  Over the years, Plaintiffs increased their investment by depositing additional funds with Defendants, and as of March 2019 the net asset value of Plaintiffs' investment was approximately $2.5 million.  (*Id.*)

Plaintiffs state they "believed that their investments would be managed suitably, and with an appropriate level of risk based on Plaintiffs' financial needs."  (*Id.* at 3.)  They allege that at some point during the investment relationship, Defendants began engaging in "risky and reckless investment strategies."  (*Id.* at 5.)  Plaintiffs allegedly requested that Defendants take a more conservative approach, but Defendants continued to exercise risky trading practices.  (*Id.* at 5–6.)  By April 3, 2020, "nearly the entirety of Plaintiffs' Investment Brokers account—$1.1 million—had been lost" and "Plaintiffs' investment in the Interactive Brokers account was merely $16,444.93.  The TD Ameritrade account had a balance of $530,000."  (*Id.* at 4.)

On September 23, 2020, Plaintiffs filed the present action against Defendants.  (Doc. 1.)  Plaintiffs assert five causes of action against Defendants including: (1) violation of the

Securities Exchange Act of 1934 ("Exchange Act") section 10(b) and Rule 10b–5, (2) violation of section 20(a) of the Exchange Act, (3) violation of section 25401 of the California Corporation Code, (4) negligent misrepresentation, and (5) breach of fiduciary duty.  (*See* Doc. 29.)

On August 12, 2022, the Court dismissed Plaintiff's third cause of action for violation of the California Corporation Code.  (Doc. 72.)  Plaintiffs' first, second, fourth, and fifth causes of action remain.  In accordance with the required supplemental briefing, the Court now addresses Plaintiff's first and second causes of action.

## II.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  FED. R. CIV. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id*.

Material facts are those "that might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *Id*.  "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."  *Id*. at 254.  The question is "whether a jury could reasonably find either that the [moving party] proved his case by the quality and quantity of evidence required by the governing law or that he did not."  *Id*. (emphasis omitted).  "[A]ll justifiable inferences are to be drawn in [the nonmovant's] favor."  *Id*. at 255.

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).  The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial.  *Id*. at 322–23.  If

the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading." *Liberty Lobby*, 477 U.S. at 248. "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted). If the nonmoving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id*. at 325. The opposing party need not show the issue will be resolved conclusively in its favor. *See Liberty Lobby*, 477 U.S. at 248–49. All that is necessary is submission of sufficient evidence to create a material factual dispute, thereby requiring a jury or judge to resolve the parties' differing versions at trial. *See id*.

### III.   DISCUSSION

Defendants claim they are entitled to partial summary judgment on Plaintiffs' first and second claims for violation of section 10(b), rule 10b–5, and section 20(a) of the Exchange Act (collectively "Exchange Act claims"). (Doc. 52–1 at 8–12.)

Section 10(b) of the Exchange Act prohibits the "use or employ, in connection with the purchase or sale of any security, . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . . ." 15 U.S.C. § 78j(b). "The elements of a section 10(b) claim are (1) a material misrepresentation or omission, (2) scienter, *i.e.,* a wrongful state of mind, (3) a connection to the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation, *i.e.,* a causal connection between the material misrepresentation and the loss." *Flaxel v. Johnson*, 541 F. Supp. 2d 1127, 1136 (S.D. Cal. 2008) (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).

/ / /

"In accordance with this statutory authority, the Securities Exchange Commission promulgated Rule 10b–5, which creates a private cause of action for investors harmed by materially false or misleading statements." *Flaxel*, 541 F. Supp. 2d at 1136. Rule 10b–5 makes it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

Section 20 of the Exchange Act holds "controlling persons . . . jointly and severally liable for violations of section 10(b) of the [Exchange Act] and Rule 10b–5." *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014).

   *i.* *Elements One and Two: Material Misrepresentation/Omission & Scienter*

Here, Defendants contend the Exchange Act claims fail as a matter of law because Plaintiffs are "vaguely pointing the finger at all Defendants for misrepresentations without any evidentiary support." (*Id.* at 10.) Specifically, "Plaintiffs could not answer simple questions in their depositions to explain why they are suing the Defendants or what misrepresentations were made by Defendants." (*Id.*)

Plaintiffs contend there are genuine issues of material fact which preclude summary judgment on Plaintiffs' Exchange Act claims, citing at least five instances of misrepresentations and/or omissions by Defendants. (Doc. 58 at 11.) First, they allege that "Defendants induced Plaintiffs to move their investments to NRI based on misrepresentations about how Plaintiffs' funds would be invested." (*Id.* at 12.) Plaintiffs originally held an investment account at Oppenheimer, but when Alberto and Guillermo Roditi opened NRI, they "induced Plaintiffs to move their money there." (*Id.* at 17.) Both of Plaintiffs' depositions allege that Alberto Roditi promised Plaintiffs he would invest conservatively, keeping Plaintiffs' retirement goals in mind. (*Id.* at 12 (citing Venice

Depo., at 11:16–12:5; Manual Depo., Vol. II at 141:9–144:8).) Plaintiffs claim they relied on this representation, and "Alberto later traded naked call options without Plaintiffs' knowledge, leading to liquidation of the [Interactive Brokers] account." (Doc. 58 at 12.)

Second, "Plaintiffs' liability expert, Lisa Roth, [stated] 'NRI was required to make full disclosure of all material facts relating to the advisory services it provided,' including information abouts its services, methods of analysis, and discretionary authority." (Doc. 58 at 13 (citing Doc. 58–1 at 47).) However, the Investment Policy Statement set forth in the Investment Advisory Contract "was unsigned, incomplete, and did not set forth any discernable plan or strategy with respect to Plaintiffs' funds or the account at NRI." (Doc. 58 at 13); *see In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1425 (9th Cir. 1994) (citing *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989) ("[a]s a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case")).

Additionally, Plaintiffs claim they were never advised of the substantial risks associated with the investments being made and that Defendants' failure to advise of such constitutes material omissions of fact. (Doc. 58 at 14.) After sustaining significant losses to the account in January 2020, Alberto Roditi assured Plaintiffs the funds would be invested conservatively, but he proceeded to make risky investments and lost a significant portion of the account. (*Id.* at 14–15 (citing Manuel Depo., Vol. II 144:2–8, 146:10–19).) Specifically, Plaintiffs state that "Alberto proceeded to double down on the TESLA positions . . . then transferred approximately $215,000 from the [TD Ameritrade] account to the [Interactive Brokers] account, to offset some of the losses incurred from the uncovered TESLA positions." (Doc. 58 at 17–18 (citing Venice Depo., at 11:21–12:5, 15:16–20; Manuel Depo., Vol II at 143:13–16, 143:23–144:8).) Plaintiffs allege Alberto Roditi moved money between Plaintiffs' accounts without authorization to conceal losses sustained by unauthorized options trades. (Doc. 58 at 15–16 (citing Ex. F at TD00122).)

To establish a claim under section 10(b) and rule 10b–5, "a plaintiff must show that the [defendant's] statements were misleading as to a material fact." *Phila. Fin. Mgmt. of*

*San Francisco, LLC v. DJSP Enters.*, 572 F. App'x 713, 716 (11th Cir. 2014) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988)). A misrepresentation is material "if there is a substantial likelihood that, under all the circumstances, a reasonable investor would consider it important in reaching an investment decision." *Ins. Underwriters Clearing House, Inc. v. Natomas Co.*, 184 Cal. App. 3d 1520, 1526 (Ct. App. 1986) (quoting *Greenapple v. Detroit Edison Co.*, 468 F. Supp. 702, 708 (S.D.N.Y. 1979), *aff'd*, 618 F.2d 198 (2d Cir. 1980)).

Moreover, a 10b–5 claim requires scienter, which is a "mental state embracing intent to deceive, manipulate, or defraud." *In re Silicon Graphics*, 183 F.3d 970, 975 (9th Cir. 1999) (internal citations omitted); *see In re Read–Rite Corp.*, 335 F.3d 843, 846 (9th Cir. 2003); *see also Lipton*, 284 F.3d 1027, 1035 n. 15 (9th Cir. 2002) ("[s]cienter is an essential element of a § 10(b) or Rule 10b–5 claim"); *see also Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1229 (9th Cir. 2004). "Plaintiffs can establish scienter by proving either actual knowledge or recklessness." *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 942 (S.D. Cal. 2019) (internal citations omitted). However, in a securities action, "[m]ateriality and scienter are both fact-specific issues which should ordinarily be left to the trier of fact." *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989); *see also Provenz v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996) ("[g]enerally, scienter should *not* be resolved by summary judgment"). "The court must deny a defendant's motion for summary judgment on intent 'unless all reasonable inferences that could be drawn from the evidence defeat the plaintiff's claims.'" *Baker*, 423 F. Supp. 3d at 942 (quoting *Provenz*, 102 F.3d at 1489).

Reviewing Plaintiffs' deposition testimony, coupled with the expert report of Lisa Roth, the Court finds that there are genuine issues of material fact regarding whether Defendants made material misrepresentations and/or omissions in violation of section 10(b), rule 10b–5, and section 20(a) of the Exchange Act and that such questions cannot be resolved by this motion.

/ / /

### ii.   Element Three: Connection with a Purchase or Sale of Security

Defendants also contend summary judgment is appropriate because they did not sell the securities at issue, thus negating the third element of the section 10(b) claim. Defendants argue "Plaintiffs' claims at issue are generally about a failure to [advise] of risks, not some misrepresentation or failure to disclose [sic] in connection with the sale because Defendants do not sell the securities." (Doc. 52–1 at 11–12.) Defendants allege they facilitated the trades as investment advisors, and did not receive any commission or compensation for the transactions in Plaintiffs' accounts. (*Id.*)

To support their argument on summary judgment, Defendants cite to Section 25017 of the Corporation Code which defines "sale" or "sell" as the sale of or disposition of a security "for value." (*Id.* at 12 (quoting CAL. CORP. CODE § 25017 (West).) Defendants also cite to *Falkowski v. Imation Corp.* and explain that "[u]nder the Ninth Circuit 10(b) cases, a misrepresentation is 'in connection with' the purchase or sale of securities if there is 'a relationship in which the fraud and the stock sale coincide or are more than tangentially related.'" (Doc 52–1 at 8 (quoting *Falkowski*, 309 F.3d 1123, 1131 (9th Cir. 2002).)

In contrast, Plaintiffs contend the transactions at issue fall squarely within the circumstances contemplated by *Falkowski v. Imation Corp.*, which provides the "purchase or sale of a security [includes] any contract to buy or sell a security" and the "alleged misrepresentation 'must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves.'" (Doc. 58 at 15–16 (quoting *Falkowski*, 309 F.3d at 1129–31).) "Although neither Rule 10b–5 nor [section] 10(b) expressly creates a private right of action, [the Supreme Court] has held that 'a private right of action is implied under [section] 10(b).'" *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) (quoting *Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 13, n. 9 (1971)); *see Shell v. Hensley*, 430 F.2d 819, 827 (5th Cir. 1970) (explaining private causes of action are recognized under rule 10b–5 of the Exchange Act); *see also Basic Inc.*, 485 U.S. at 230–31.  It is Plaintiff's position that "Defendant's misrepresentations coincide and

touch the purchase and sale of securities and therefore satisfy the element under The Exchange Act." (Doc. 77 at 3.)

The Court finds that the allegations against Defendants are sufficient to be considered "in connection with" the purchase or sale of securities. *See Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 651 F.2d 615, 619 (9th Cir. 1981) (finding that "defendants were guilty of fraud 'in connection with' the sale of securities, where the account executive misrepresented to plaintiffs the risks of buying securities on margin in a declining market"); *see also S.E.C. v. Zandford*, 535 U.S. 813, 822 (2002) (finding that the plaintiffs "were injured as investors through respondent's deceptions, which deprived them of any compensation for the sale of their valuable securities" and that "[t]hey were duped into believing respondent would 'conservatively invest' their assets in the stock market and that any transactions made on their behalf would be for their benefit").

Moreover, the Supreme Court has noted that "[s]ection 10(b) must be read flexibly, not technically and restrictively." *Superintendent of Ins. of State of N. Y.*, 404 U.S. at 12; *see Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972) (noting that "Congress intended securities legislation enacted for the purpose of avoiding frauds to be construed 'not technically and restrictively, but flexibly to effectuate its remedial purposes'") (quoting *Sec. & Exch. Comm'n v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 195 (1963)); *Zandford*, 535 U.S. at 825 (explaining "the securities transactions and breaches of fiduciary duty coincide. Those breaches were therefore 'in connection with' securities sales within the meaning of § 10(b)").

Here, Plaintiffs allegedly requested that Defendants take a more conservative approach, but Defendants continued to exercise risky trading practices. (Doc. 29 at 5–6.) Both of Plaintiffs' depositions allege that Alberto Roditi promised Plaintiffs he would invest conservatively, keeping Plaintiffs' retirement goals in mind, but "Alberto later traded naked call options without Plaintiffs' knowledge, leading to liquidation of the [Interactive Brokers] account." (Doc. 58 at 12 (citing Venice Depo., at 11:16–12:5; Manual Depo., Vol. II at 141:9–144:8).) Thus, the alleged conduct is sufficient to be

considered "in connection with" the purchase or sale of securities. Therefore, the Court concludes Defendants did not meet their burden of proving entitlement to judgment as a matter of law with respect to Plaintiffs' Exchange Act claims.

## IV. CONCLUSION

For the foregoing reasons Defendants' partial MSJ is **DENIED** as to Plaintiffs' first and second causes of action for violation of section 10(b), rule 10b–5, and section 20(a) of the Exchange Act.

**IT IS SO ORDERED.**

DATE: October 13, 2022

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE