1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11  MANUEL RODITI and VENICE
    BEJARANO,
12
                                    Plaintiffs,
13
    v.
14
    NEW RIVER INVESTMENTS INC., et
15  al.,
16                                  Defendants.
17
18
19
20

Case No.:  3:20-cv-01908-RBM-MSB

**ORDER DENYING PLAINTIFFS'
MOTION TO EXCLUDE
DEFENDANTS' LATE-PRODUCED
INVESTMENT ADVISORY
CONTRACTS AS MOOT AND
GRANTING PLAINTIFFS'
REQUEST FOR SANCTIONS**

**[Doc. 145, 170]**

21      Pending before the Court is Plaintiffs Manuel Roditi and Venice Bejarano's
22  (collectively, "Plaintiffs") motion to exclude Defendant New River Investments, Inc.,
23  Alberto Roditi, and Guillermo Roditi Dominguz's (collectively, "Defendants") late
24  produced investment advisory contracts ("Motion") (Doc. 145) and Plaintiffs' subsequent
25  request for monetary sanctions (Doc. 163, January 29, 2024 Transcript of Status Hearing
26  11:17–12:7; Doc. 170).
27      The Court finds this matter suitable for determination without oral argument
28  pursuant to Civil Local Rule 7.1(d)(1).  For the reasons set forth below, Plaintiffs' Motion

1

is **<u>DENIED AS MOOT</u>** and Plaintiffs' subsequent request for monetary sanctions is **<u>GRANTED IN PART</u>** and **<u>DENIED IN PART</u>**.

## I.   <u>FACTUAL BACKGROUND</u>

**A.   Plaintiffs' Motion**

Plaintiffs filed their Motion on January 25, 2024.  (Doc. 145.)  In their Motion, Plaintiffs explained that, on January 17, 2024, Defendants supplemented their responses to Plaintiffs' Requests for Production of Documents, which were first propounded to Defendants years earlier, on May 3, 2021.  (*Id.* at 3.[1])  The supplemental responses included investment advisory contracts ("IACs") for Plaintiffs' accounts with Defendants, including the Interactive Brokers account at issue in this case.  (*Id.*)  Plaintiffs argued that the IACs should be excluded from use at trial because Defendants' late disclosure was not substantially justified or harmless under Federal Rule of Civil Procedure 37(c)(1).  (*Id.* at 3–8.)

On January 26, 2024, the Court ordered Defendants to file a response to Plaintiffs' Motion on or before January 27, 2024.  (Doc. 148 at 2.)  The Court also indicated that Defendants should be prepared to provide sworn testimony regarding the issues presented in Plaintiffs' Motion at the status hearing set for January 29, 2024.  (*Id.*)

**B.   Defendants' Opposition**

On January 27, 2024, Defendants filed their Opposition to Plaintiffs' Motion.  (Doc. 150.)  In their Opposition, Defendants indicated that, on January 9, 2024, after a Mandatory Settlement Conference with Magistrate Judge Michael S. Berg, Defendant Guillermo Roditi Dominguez ("Defendant Dominguiez") "returned to his home and began to look in earnest in every box that he had in his possession, whether or not he thought that they had any contents that would be relevant to this lawsuit, to see if he could find the IACs[.]"  (*Id.* at 5.)  Defendant Dominguez then found Plaintiffs' IACs, as well as other client documents,

---

[1] The Court cites the CM/ECF pagination unless otherwise noted.

in a box that also contained his personal CDs.  (*Id.*)  Defendants argued that their late disclosure was substantially justified because "Defendants believed that they had complied to the best of their abilities and had performed a diligent search."  (*Id.* at 5–6.)  Defendants also argued that the late disclosure was harmless because Plaintiffs signed the documents, knew about their existence, kept copies for themselves, and failed to produce them.  (*Id.* at 6–9.)  Finally, Defendants argued that they did "not act in bad faith or willfulness" because they had "no logical or sensible purpose" not to produce the IACs.  (*Id.* at 7.)

**C.     The January 29, 2024 Hearing**

On January 29, 2024, the parties appeared for the scheduled status hearing.  (Doc. 152.)  At the hearing, Plaintiffs' counsel noted that the parties had litigated this case for four years and a key aspect to the case had been the fact that Defendants did not have IACs with Plaintiffs, which also contain investment policy statements.  (Doc. 163, January 29, 2024 Transcript of Status Hearing 6:18–25.)  Plaintiffs' counsel also indicated that the parties spent a lot of time in depositions discussing the missing IACs, that Plaintiffs' expert's first two opinions concerned Defendants acting in a discretionary capacity without an IAC, and that Plaintiffs had "built arguments in this case on the lack of the investor policy statement, the lack of an [IAC]."  (*Id.* at 7:1–25.)

Nevertheless, Plaintiffs' counsel concluded that he had "altered" where he stood on the Motion because he was "not comfortable trying the case without [the IACs]."  (*Id.* at 8:14–16.)  Instead of exclusion, Plaintiffs' counsel requested that his expert be able to offer some additional opinions incorporating the new IACs and that he be able to add exhibits to the trial exhibit list.  (*Id.* at 8:20–25, 9:9–14.)  Plaintiffs' counsel also requested that he have "the latitude to point out the timing of the productions, the fact that they were produced [] in the last three weeks."  (*Id.* at 9:4–8.)  Plaintiffs' counsel also requested that he be able to add a cause of action for breach of contract.  (*Id.* at 9:15–10:11.)  Finally, Plaintiffs' counsel requested monetary sanctions for the extra attorneys' fees and costs that were incurred and would continue to be incurred due to the late disclosure.  (*Id.* at 11:17–12:7.)

3

In response, Defendants' counsel argued that Plaintiffs were aware of these documents because they had physically signed them. (*Id.* at 12:15–19, 15:18–16:7.) Defendants' counsel indicated that Defendant Dominguez had an "epiphany moment" after a settlement conference with Judge Berg and decided to check additional boxes for the IACs. (*Id.* at 16:10–17:1.) Defendant Dominguez then testified that the IACs had been in his homes in Los Angeles since 2013 when they were shipped from Defendant New River Investments, Inc.'s offices in Fort Lauderdale. (*Id.* at 27:16–18; Doc. 150 at 5; Doc. 150-3 ¶¶ 2–3.) He testified that the box was one of only three or four boxes located in his basement but that he did not search them previously because he did not think they contained any work documents. (Doc. 163, January 29, 2024 Transcript of Status Hearing at 28:7–25.) The box ultimately contained approximately four to five inches of investment advisory contracts for clients. (*Id.* at 24:19–26: 17.)

At the January 29, 2024 hearing, the Court found that the late disclosure was not harmless because this litigation has been going on for four years and the parties had spent a lot of time, money, and resources litigating this case. (*Id.* at 17:17–23.) The Court then took the matter under submission. (*Id.* at 34:2–3.) The Court also requested that Plaintiffs' counsel file a declaration supporting his request for monetary sanctions. (*Id.* at 37:4–13.)

**D.   January 30, 2024 Remote Hearing**

On January 30, 2024, after taking the matter under submission, the Court held a remote hearing, in which the Court allowed Plaintiffs to amend their complaint to conform to proof and to supplement their expert report. (Doc. 164, January 30, 2024 Remote Hearing Transcript 3:24–4:10.) However, the Court did not rule on Plaintiffs' request for monetary sanctions.

**E.   Plaintiffs' Request and Supporting Documentation for Monetary Sanctions**

As requested by the Court, Plaintiffs filed a declaration in support of their request for monetary sanctions on February 5, 2024. (Doc. 170, Declaration of Douglas A. Pettit ("Pettit Decl.").) In his declaration, Plaintiffs' counsel indicated that Plaintiffs' expert's first three opinions in her initial report focused on the lack of a proper IAC and investment

4

policy statement.  (Pettit Decl. ¶ 9.)  Plaintiffs' counsel stated that he had paid their expert $26,162.50 for the time spent preparing her expert report and $4,875 to prepare for her deposition.  (*Id.*)  Plaintiffs' counsel attached invoices supporting these figures.  (*Id.* (Ex. B).)

Plaintiffs' counsel wrote that his "office spent substantial time preparing for depositions and trial premised on the belief that there was no written [IAC] and no written investor policy statement[,]" two documents that "would have affected every aspect of the way this case was handled." (Pettit Decl. ¶ 10.)  Plaintiffs' counsel indicated that the parties attended two mandatory settlement conferences and one mediation before the IACs were produced and that much of the discussion at these meetings concerned Plaintiffs' risk tolerance, an issue addressed in the IACs.  (*Id.*)  Plaintiffs' counsel then asserted that "[w]hile arguably all the work on this case since 2021 has been permeated by the failure to produce the [IAC], I have made a reasonable estimate that the failure to produce the documents affected 25% of the time spent taking depositions, preparing for trial, and attending settlement conferences, and have requested sanctions for this work only." (*Id.* ¶ 14.) Accordingly, Plaintiffs' counsel requested that some or all of the following amounts be paid by Defendants as sanctions:

- Fees paid to Plaintiffs' expert for her original report: $26,162.50

- Fees paid to Plaintiffs' expert to prepare for her deposition: $4,875.00

- Attorneys' fees to prepare motion to exclude documents: $8,860.00

- Attorneys' fees incurred to rework trial materials for trial: $6,660.00

- Attorneys' fees to prepare Amended Complaint, revise Special Verdict Form, and revise jury instructions: $1,300.00

- Attorneys' fees for attending mandatory settlement conferences and mediation (25%): $3,565.63

- Attorneys' fees incurred in taking depositions of Defendants Guillermo Roditi Dominguez and Alberto Roditi (25%): $9,547.88

(*Id.* ¶ 15.)

**F.      Defendants' Opposition to Plaintiffs' Request for Monetary Sanctions**

On February 9, 2024, Defendants filed their Opposition to Sanctions for Their Failure to Timely Produce Documents.  (Doc. 190.)  In their Opposition, Defendants argue that an award of sanctions is not warranted or appropriate because the late production of the IACs did not increase the cost of litigation and because Plaintiffs signed the IACs but also failed to produce them.  (*Id.* at 2.)  Defendants also argue that their conduct was not undertaken with the intent to deprive Plaintiffs of relevant evidence or with willful and conscious disregard for the preservation of evidence.  (*Id.* at 5–6 (citing Fed. R. Civ. P. 37(e) and *Colonies Partners, L.P. v. County of San Bernardino*, Case No. 5:18-cv-00420-JGB (SHK), 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020)).)  Finally, Defendants argue Plaintiffs have not been unfairly prejudiced or harmed by the late production because they added a breach of contract claim and relied on the IAC for the Interactive Brokers account at trial.  (*Id.* at 2, 6–7.)

In the alternative, Defendants argue that the Court should exclude the following categories of fees:

1.  25% of the attorneys' fees incurred attending the January 29, 2024 mandatory settlement conference and mediation.

2.  Attorneys' fees incurred preparing Plaintiffs' Motion.

3.  Expert witness fees paid to Lisa Roth for her original report and for preparation for her deposition.

4.  Attorneys' fees incurred to rework trial materials.

5.  25% of the attorneys' fees incurred taking Defendants' depositions.

(*Id.* at 7–8.)

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 37(c)(1) provides:

(1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In

6

addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

> (B) may inform the jury of the party's failure; and

> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1). The Advisory Committee Notes describe Rule 37(c)(1) as a "self-executing," "automatic" sanction to "provide [] strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion[.]" Fed. R. Civ. P. 37 Notes of Advisory Committee on Rules—1993 Amendment. In other words, "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). "[L]itigants can escape the 'harshness' of exclusion only if they prove that the discovery violations were substantially justified or harmless." *Merch. v. Corizon Health*, Inc., 993 F.3d 733, 740 (9th Cir. 2021). However, "[t]he automatic nature of the rule's application does not mean that a district court must exclude evidence that runs afoul of Rule 26(a) or (e)—Rule 37(c)(1) [also] authorizes appropriate sanctions '[i]n addition to or instead of [exclusion].'" *Id.* (internal citation omitted).

## III.  DISCUSSION

As stated above, "litigants can escape the 'harshness' of exclusion [or lesser sanctions] only if they prove that the discovery violations were [1] substantially justified or [2] harmless." *Merch.*, 993 F.3d at 740. Defendants' opposition to Plaintiffs' declaration regarding monetary sanctions does not explicitly address each prong. Instead, Defendants argue that the Court must examine intent and that their conduct was not undertaken with the intent to deprive Plaintiffs of relevant evidence. In support of this

position, Defendants cite Rule 37(e) and *Colonies Partners, L.P. v. County of San Bernardino*, regarding the failure to preserve electronically stored information, which has no applicability to the present case.  (Doc. 190 at 5–6 (citing 2020 WL 1491339, at *9).) Therefore, the Court will not consider Defendants' argument regarding intent.  The Court now turns to its analysis of each prong under Rule 37(c)(1).

**A.    Harmlessness**

Defendants argue that Plaintiffs are not unfairly prejudiced because they relied upon the IAC for the Interactive Brokers account at trial.  Although not explicit, the Court construes this argument as one regarding harmlessness under Rule 37(c)(1).

The Court already found that Defendants' late disclosure is not harmless because this litigation has been going on for four years and the parties spent a lot of time, money, and resources conducting discovery and preparing for trial under the assumption that the parties never executed an IAC.  (January 29, 2024 Hearing Transcript at 17:17–23.) Further, even if Plaintiffs ultimately relied on one of the IACs, Plaintiffs still needed to pivot and adapt their litigation strategy on the eve of trial, which constitutes harm.  *See Poitra v. Sch. Dist. No. 1 in the County of Denver*, 311 F.R.D. 659, 670 (D. Colo. 2015) (having little time to "re-calibrate" trial preparation constitutes prejudice or harm). Plaintiffs also needed their expert to revise her opinions and produce a supplemental report.

Additionally, Defendants' reliance on *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337 (9th Cir. 1995) is misplaced.  In *Anheuser-Busch*, the Court evaluated prejudice in the context of the Court's inherent power to dismiss claims, the Court did not discuss the "harmless" prong of Rule 37(c)(1).  69 F.3d at 348 ("We therefore need not address whether dismissal was appropriate under the alternate authority of Rule 37.").  Further, Defendants' argument that Plaintiffs also had copies of the IACs and failed to produce them lacks evidentiary support.  Defendants' counsel indicated that the IACs they found in a box were the original copies with wet signatures.  (*Id.* at 12:23-13:3.) Defendants have not offered any evidence that Plaintiffs retained copies of the IACs after they signed the originals and returned them.

8

**B.    Substantial Justification**

Having already found that Defendants' late disclosure of the IACs is not harmless (*id.* at 17:17–23), the Court now finds that Defendants' late disclosure of the IACs is not substantially justified.  Defendant Dominguez testified that the IACs had been in his homes in Los Angeles ever since they were shipped from Defendant New River Investments Inc.'s offices in Fort Lauderdale in 2013.  (January 29, 2024 Hearing Transcript at 27:16–18; Doc. 150 at 5; Doc. 150-3 ¶¶ 2–3.)  He also testified that the box was one of only three or four boxes located in his basement.  (*Id.* at 28:7–25.)  It is inexplicable why, in the last four years of litigation, Defendant Dominguez did not check every box that originated from Defendant New River Investment Inc.'s Fort Lauderdale office whether he thought they contained work documents or not.  The Court cannot find that Defendants' late disclosure of the IACs was substantially justified.  See *Beach Mart, Inc. v. L&L Wings, Inc.*, 302 F.R.D. 396, 412 (E.D.N.C. 2014) (finding that the loss of a box of licensing agreements was not substantially justified under Rule 37(c)), aff'd sub nom. *Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118 (4th Cir. 2019).

**C.    Sanctions**

Having found that Defendants' late disclosure of the IACs was neither harmless nor substantially justified, the Court now has broad discretion to sanction Defendants. *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1178 (9th Cir. 2008) ("'[W]e give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1).'") (quoting *Yeti by Molly, Ltd.*, 259 F.3d at 1106); *see also Rhodes v. Sutter Health*, 949 F. Supp. 2d 997, 1010 (E.D. Cal. 2013) ("The district court has wide discretion to issue sanctions under Rule 37(c)(1)."); *Naama v. BMW of N. Am., LLC*, Case No. 21-cv-00677-AJB-JLB, 2022 WL 16628369, at *2 (S.D. Cal. June 13, 2022) (same); *Bonzani v. Shinseki*, No. 2:11-cv-0007-EFB, 2014 WL 66529, at *4 (E.D. Cal. Jan. 8, 2014) (same).

"[S]anctions authorized under Rule 37(c)(1) relate solely to parties, not counsel." *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1225 (10th Cir. 2015) (relying on *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119 (3d Cir.2009) and *Maynard v. Nygren*,

9

332 F.3d 462 (7th Cir.2003)); *see also Apex Oil Co. v. Belcher Co. of New York*, 855 F.2d 1009, 1014 (2d Cir. 1988) ("By its express terms, Rule 37(c) applies only to a party.")  A district court need not sanction every defendant. *Estakhrian v. Obenstine*, No. CV11-3480-FMO (CWxX), 2016 WL 6868178, at *13 (C.D. Cal. Feb. 29, 2016) (imposing Rule 37(c)(1) sanctions on one of several defendants only).

In determining the appropriate sanctions award, the Court considers Defendants' objections to the categories of fees requested.  First, Defendants contest Plaintiffs' request for attorneys' fees for attending the January 29, 2024 mandatory settlement conference. (Doc. 190 at 7.)  The Court partly agrees.  While the Court ordered the parties to attend the mandatory settlement conference prior to trial due to Defendant's late disclosure of the IACs, the Court also thought an additional settlement conference would be beneficial to both parties even absent the present discovery dispute.

Second, Defendants contest Plaintiffs' request for attorneys' fees for the preparation of Plaintiffs' Motion because Plaintiffs decided to withdraw the Motion.  (*Id.*)  The Court acknowledges that Plaintiffs decided to withdraw their Motion but also notes that it provided the Rule 37(c)(1) framework under which Plaintiffs then requested lesser sanctions.

Third, Defendants contest Plaintiffs' request for the fees paid to Plaintiffs' expert for her original report opining on the lack of an IAC and for her preparation for her deposition. Defendants reason that Plaintiffs' expert ignored Defendants' deposition testimony regarding "the IAC Investment Objective and the IAC was sent to the Plaintiffs in Mexico City, Mexico." (*Id.* at 7–8.)  The Court is not persuaded.  An expert cannot be expected to opine on an IAC that, although referenced in a party's deposition testimony, was missing, never produced, and, therefore, unavailable to Plaintiffs' expert when she was drafting her report.  However, as Plaintiffs concede, only the first three opinions of Plaintiff's expert's initial report focused on the lack of a proper IAC and investment policy statement.  (Pettit Decl. ¶ 9.)  Further, because she was already familiar with the facts and circumstances of the case, Plaintiffs' expert was able to author a supplemental report in the few days before

10

trial.  Therefore, the Court is not inclined to award Plaintiffs the entire cost of Plaintiffs' expert's original report.

Fourth, Defendants contest Plaintiffs' request for attorneys' fees incurred reworking trial materials, including the jury instructions and the special verdict form, because Plaintiffs ultimately relied on the IAC at trial.  (*Id.* at 7.)  The preparation of jury instructions and special verdict forms is an ongoing process that had not been finalized when the Defendants discovered and disclosed the IACs.  Therefore, even absent this discovery dispute, additional trial preparation would have been required.  Further, the Court acknowledges that Plaintiffs ultimately relied on the IAC at trial and prevailed on its added breach of contract claim.  However, Plaintiffs still needed to expend the time and hours necessary to pivot and adapt their litigation strategy on the eve of trial, which constitutes harm.  *See Poitra*, 311 F.R.D. at 670.

Lastly, Defendants contest Plaintiffs' request for attorneys' fees incurred in taking Defendant Guillermo Dominguez Roditi and Alberto Roditi's depositions because Plaintiffs "made the decision to withdraw their breach of contract claims against Guillermo and Alberto, and they did not take New River's deposition pursuant to F.R.C.P. 30(b)(6)." (*Id.* at 7.)  The Court is not certain how Plaintiffs' withdrawal of its breach of contract claim against the individual defendants is relevant to the present sanctions analysis.  As Plaintiffs explain, the parties spent a lot of time in depositions discussing the missing IACs. (Doc. 163, January 29, 2024 Transcript of Status Hearing at 7:1–25.)  However, the Court is concerned that Plaintiffs' 25% estimate is speculative and unsupported by documentation.

Considering Plaintiffs' request, Defendants' objections, the facts of the case, the circumstances of the late disclosure, and the credibility of both parties and their counsel, the Court chooses to exercise its broad discretion and limit the award of sanctions against Defendants.  Although there was a lengthy delay in the production of the IACs, which were central to this litigation, they were eventually produced on the eve of trial, which allowed the Court to cure the late disclosure by permitting Plaintiffs' expert to offer additional

opinions and allowing Plaintiffs to add a cause of action for breach of contract.  The Court also allowed evidence to be introduced at trial regarding the late disclosure of the IACS and Defendant Dominguez's lack of diligence in storing and searching for the client documents.  These non-monetary sanctions mitigated much of the harm done to Plaintiffs. Further, in requesting the $60,971.01, Plaintiffs did not well-articulate the additional work and specific costs attributable to the late disclosure of the IACS.  However, the Court does not dispute that additional work was required due Defendants' unjustifiably late disclosure of the IACs.  The Court finds that the reasonable value for this work is 10%—or $6,097— of the amount requested.  Additionally, the Court imposes the sanctions against Defendant Dominguez only.  But for his failure to conduct a diligent search of his home for relevant documents, Defendants would not have failed to disclose the IACs.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, the Court finds that Plaintiffs' request for sanctions is reasonable because Defendants' late disclosure of the IACs was not harmless or substantially justified.  The Court **<u>ORDERS Defendant Guillermo Roditi Dominguez</u>** to pay Plaintiffs **<u>$6,097 on or before May 7, 2024</u>**.

**IT IS SO ORDERED.**

DATE:  April 22, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE